IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| ANNETTE GRANT TAYLOR, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 7:16-cv-1827-TMP |
| ALABAMA CVS PHARMACY, L.L.C.; and STEPHANIE M. HOFFER, | ) |
| Defendants. | ) |

MEMORANDUM OPINION and ORDER

This cause is before the court on the plaintiff's motion to remand the action to the Circuit Court of Tuscaloosa County, from which it was removed on November 10, 2016. (Doc. 1). Plaintiff filed an amended complaint on November 17, 2016, followed by her motion to remand (Doc. 5). The parties consented to the undersigned magistrate judge's dispositive authority under 28 U.S.C. § 636(c) on January 3, 2017. (Doc. 16).

I. **Procedural and Factual Background**

On October 10, 2016, the plaintiff filed her original complaint in the Circuit Court of Tuscaloosa County, Alabama (Doc. 1-4), naming as defendants "CVS Pharmacy Store #3004" and "Fictitious Defendants 1-10." In it, she alleged that

she presented a written prescription to the pharmacy on April 1, 2016, and, unbeknownst to her, the pharmacy incorrectly filled the prescription with the wrong medication (Bupropion). After taking the wrong medication for over a month, the plaintiff returned to the pharmacy on May 7, 2016, to have it re-filled, and once again, the wrong medication was given to her. After experiencing unexpected side effects, the plaintiff returned to her doctor, who informed her that the wrong medication had been used to fill the prescription. Based on these pleaded facts, the plaintiff alleged claims for negligence, wantonness, negligent/wanton training and supervision, and negligent/wanton failure to warn. In each of the four counts of the complaint, the plaintiff demanded the same relief: "Plaintiff demands judgment against all Defendants and Fictitious Defendants jointly and severally, in a sum of compensatory and/or punitive damages not in excess of the jurisdictional limits of this Court which will fairly and adequately compensate Plaintiff for the above described damages and injuries, together with interest from the date of the incident and the costs of the proceeding."

On November 10, 2016, Alabama CVS Pharmacy LLC ("Alabama CVS") filed a notice of removal, alleging that such is the true legal name of the defendant (instead of CVS Pharmacy Store #3004). Alabama CVS offered the affidavit of Thomas Moffatt to establish that CVS Pharmacy Store #3004 is owned by Alabama CVS Pharmacy LLC, and that the only member of the defendant LLC is

an entity known as CVS Pharmacy, Inc., which is incorporated in Rhode Island and has its principal place of business there.  The defendant also asserted that the combination of the nature of the claims alleged and the plaintiff's demand for punitive damages plainly met the $75,000.00 minimum amount in controversy.  The defendant relies on 28 U.S.C. § 1332 for federal subject-matter jurisdiction.

A week later, on November 17, 2017, the plaintiff filed an amended complaint without seeking leave to do so.  (Doc. 4).  In her First Amended Complaint, she substituted Alabama CVS Pharmacy LLC for the previously named CVS Pharmacy Store #3004, and she named Stephanie M. Hoffer as a defendant, alleging that Hoffer is the pharmacist who incorrectly filled the prescription.[1]  (Doc. 4).  Alabama CVS filed a motion to strike the First Amended Complaint on November 18, 2016, contending that the court should exercise its discretion under 28 U.S.C. § 1447(e) to disallow the amendment because it will destroy the court's diversity jurisdiction.  Hoffer was served with a summons and copy of the amended complaint on December 2, 2016, and filed her own motion to dismiss the amended complaint on December 22, 2016.

The motions have been fully briefed and are ready for disposition.

---

[1]  The First Amended Complaint makes no reference to any fictitious defendants, although the title of the action in the caption contains an *et al.* reference.  The amended complaint alleges that Hoffer is "an adult resident citizen of Tuscaloosa County, Alabama.

II. **Analysis**

The issue boils down to whether the plaintiff should be allowed to amend the complaint to name Hoffer as a defendant in this action.[2] Doing so would destroy the diversity jurisdiction of the court and require remand. *See* 28 U.S.C. § 1447(e). There appears to be no dispute that, at the time of removal on November 10, 2016, there was complete diversity of citizenship among the named and served parties,[3] and the plaintiff has not disputed that the amount in controversy exceeds the jurisdictional minimum. The Moffatt affidavit attached to the notice of removal clearly established the proper identification of the defendant and, ultimately, that the defendant, Alabama CVS, is a citizen of Rhode Island. The court finds the amount in controversy to be at least $75,000, exclusive of interest and costs, given that allegation that the defendant negligently or wantonly mis-filled a prescription *twice*, resulting in some undisclosed physical injury and emotional distress to the plaintiff. The demand for punitive damages removes any lingering doubt that the real amount in controversy exceeds the jurisdictional minimum.[4] Hence, but for

---

[2] The court acknowledges that defendant Alabama CVS also argues that the First Amended Complaint should be stricken because the plaintiff did not seek leave to file it, as required by Rule 15(a)(2), but that would be a Pyrrhic victory at best. Assuming the court struck the amended complaint on the limited basis that no leave was granted to file it, the plaintiff would be free immediately to file a motion for leave to file the same amended complaint, forcing the court to deal with the real issue—should the jurisdiction-destroying amendment be allowed.

[3] The citizenship of the "Fictitious Defendants" is disregarded. 28 U.S.C. § 1441(b).

[4] The complaint does not demand a sum certain; therefore, the burden of proving that the minimum amount in controversy falls to the removing defendant to prove the jurisdictional

the filing of the First Amended Complaint, there is no question about the propriety of the removal on diversity grounds.

As stated, the principal question is whether the plaintiff's First Amended Complaint should be allowed where doing so will destroy complete diversity between the parties and require remand of the case to state court. At the outset, the plaintiff argues that 28 U.S.C. 1447(e) does not apply because the amendment does not "add" or "join" a new defendant, but, rather, substitutes the true name of Stephanie Hoffer for one of the fictitiously named defendants in the original complaint. She points out that § 1447(e) reads:

> If after removal the plaintiff seeks to *join additional defendants* whose *joinder* would destroy subject-matter jurisdiction, the court may deny *joinder* or permit *joinder* and remand the action to the State court. [Emphasis added].

Plaintiff contends she is not "join[ing] additional defendants," but merely identifying correctly the true name of a defendant pleaded in the original complaint, namely one of the Fictitious Defendants.

---

amount by a preponderance of the evidence. *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996); *Williams v. Best Buy Company, Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001); *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277 (11th Cir. 2001). While there are constitutional limits on the amount of punitive damages a jury may award, punitive damages remain largely within the discretion of the jury. Where there is the reasonable possibility of an award of punitive damages greater than the jurisdictional minimum, as the court may determine from its "judicial experience and common sense," *see Roe v. Michelin N. Am., Inc*, 613 F.3d 1058, 1065 (11th Cir. 2010), removal is proper.

There is some limited Eleventh Circuit authority for such an argument. In *Ingram v. CSX Transportation, Inc.*, 146 F.3d 858 (11th Cir. 1998), the plaintiff filed suit in Alabama circuit court against CSX for injuries she suffered in a railroad-crossing accident. The crossing was owned by the City of Albertville, Alabama, who was not named as a defendant in the original complaint. Because of the diversity of citizenship between the plaintiff and CSX, the railroad removed the action to the federal district court. After the removal, the plaintiff moved for leave to amend the complaint to add the City as an additional defendant. The district court granted the motion, but only upon the express understanding that doing so would not divest the court of the subject-matter jurisdiction that existed at the time of removal. After the district court granted summary judgment to both defendants, the plaintiff appealed, arguing that the court lacked subject-matter jurisdiction because her own amended complaint adding the City destroyed diversity and required a remand to state court. In response, the defendants argued that because diversity existed when the case was removed, the court did not lose jurisdiction by allowing the post-removal amendment.

Addressing these arguments, the court of appeals wrote:

> The appellees argue that the district court's diversity jurisdiction was determined at the time CSX filed its notice of removal. The appellees rely on the Supreme Court's decision in *Freeport–McMoRan, Inc. v. K N Energy, Inc.*, which held that "[d]iversity jurisdiction, once established, is not defeated by the addition of a nondiverse

6

[dispensable] party to the action." 498 U.S. 426, 428, 111 S. Ct. 858, 112 L. Ed. 2d 951 (1991). In *Freeport*, a gas seller brought a breach of contract action against a buyer. The seller then assigned its interest in the contract and substituted the nondiverse assignee as a plaintiff pursuant to Fed. R. Civ. P. 25(c). In a *per curiam* opinion, the Supreme Court held that "diversity of citizenship is assessed at the time the action is filed[,]" and that "if jurisdiction exists at [that] time ... such jurisdiction may not be divested by subsequent events." *Freeport–McMoRan*, 498 U.S. at 428, 111 S. Ct. 858. The court rejected the opposite rule, which it reasoned could "have the effect of deterring normal business transactions during the pendency of what might be lengthy litigation." 498 U.S. at 428, 111 S. Ct. 858. The appellees assert that, under *Freeport*, federal diversity jurisdiction attached at the time of removal and was not destroyed when the district court added the City as a defendant. We disagree.

CSX and the City construe *Freeport*'s holding too broadly. *Freeport* does not stand for the proposition that *all* additions of nondiverse parties are permissible as long as complete diversity existed at the time of commencement of the lawsuit. Instead, the holding in *Freeport* relies upon the assignee's having been substituted as a plaintiff under Fed. R. Civ. P. 25(c). In this case, the City's addition was unrelated to rule 25. As a result, we find *Freeport* to be inapplicable. When the district court granted Ingram's motion to add the City as a defendant, complete diversity no longer existed between the parties, thereby destroying subject matter jurisdiction.

Although Ingram styled her motion to add the City as a motion to amend her complaint pursuant to Fed. R. Civ. P. 15(a), this amendment amounted to a joinder, pursuant to Fed. R. Civ. P. 20. We presume that Ingram sought to add the City because her alleged right to relief against it arose out of the same transaction or occurrence as her alleged right to relief against CSX, and because questions of law or fact common to both defendants were likely to arise in the action. *See* Fed. R. Civ. P. 20(a). Thus, in determining whether to grant Ingram's motion, the district court should have considered 28 U.S.C.A. § 1447(e), which provides: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit

> joinder and remand the action to the State court." 28 U.S.C.A.
> § 1447(e) (West 1994).

*Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 861–62 (11th Cir. 1998) (internal footnotes omitted).

Although the instant case is not on all fours with *Ingram*, the case is instructive. *Ingram* read the language of § 1447(e) narrowly to apply to situations where a "new" defendant is being added or "joined" in the case. It notes that where a new defendant is *substituted* for an original defendant, § 1447(e) does not apply, but, instead, the rule in *Freeport-McMoRan* is used. Ultimately, the court of appeals concluded that the addition of the City of Albertville by amendment constituted the joining of a new defendant, not the substitution of an original defendant, thus triggering § 1447(e).

*Ingram* does not involve fictitious defendants, and it gives no clear direction concerning amendments changing the name of an original fictitious defendant to the defendant's true name. It is arguable, however, that changing the name of a fictitious defendant to the defendant's true name is comparable to a mere substitution. Fictitious or "John Doe" names are used for defendants whose existence and potential liability are known, but whose true identity is not known at the time of the filing. Fictitious party practice under Alabama state rules allows a plaintiff to sue a defendant under a fictitious name if the defendant is adequately

described to make clear that a real defendant exists, but whose true identity is not known. This allows for the tolling of the statute of limitation until the true identity can be discovered with due diligence and the name of the fictitious party changed to the true identity. The Alabama Supreme Court has explained:

> "The purpose of Rule 9(h)[, Ala. R. Civ. P.,] is to toll the applicable statute of limitations when the plaintiff has diligently pursued the identity of, but has been unable to identify, certain defendants. The fictitious name serves as a placeholder for the defendant, and Rule 15(c)[, Ala. R. Civ. P.,] allows the claim against the substituted defendant to relate back to the date of the original complaint. *Toomey v. Foxboro Co.*, 528 So. 2d 302 (Ala. 1988).
>
> "'Rule 9(h)[, Ala. R. Civ. P.,] is not intended to give plaintiffs additional time beyond the statutorily prescribed period within which to formulate causes of action. Instead, the principal reason for the rule is to toll the statute of limitations in emergency cases where [the] plaintiff knows he has been injured and has a cause of action against some person or entity, but has been unable to ascertain through due diligence the name of that responsible person or entity.'
>
> "*Columbia Eng'g Int'l, Ltd. v. Espey, 429 So.2d 955, 959 (Ala.1983) (citing Browning v. City of Gadsden*, 359 So.2d 361 (Ala.1978))."

*Ex parte Lucas*, 212 So. 3d 921, 926–27 (Ala. 2016) (quoting *Weber v. Freeman*, 3 So. 3d 825, 832 (Ala. 2008)). Thus, under this practice, the fictitiously named defendant is a *real* defendant, not merely a hypothetical one, and the substitution of the true name of the defendant does not change the parties or "add" or "join" a new

party, it merely corrects the identification of an original defendant sued under a fictitious name.

Viewed in the light cast by *Ingram*, the substitution of the true identity of a fictitiously named defendant seems comparable to the mere substitution of a party discussed in *Freeport-McMoRan*, rather than the adding or joinder of a *new* party. If so, an amendment to correct the name of a fictitiously-named defendant does not trigger the application § 1447(e), because all that occurs is an amendment to correct a misnomer, not the joinder of a new defendant.[5]  *Wright and Miller* has addressed this possibility:

---

[5]  It is frequently argued that fictitious-party practice is not recognized in federal court, but this is only partially correct.  When a federal court is sitting in diversity jurisdiction, Fed. R. Civ. P. 15(c)(1) allows the court to apply *state* relation-back rules.  *See Saxton v. ACF Indus., Inc.*, 254 F.3d 959, 963 (11th Cir. 2001); *see also Pompey v. Lumpkin*, 321 F. Supp. 2d 1254, 1258 (M.D. Ala. 2004), aff'd sub nom. *Pompey v. Fulmer*, 127 F. App'x 473 (11th Cir. 2005).  Also, separate and apart from application of state rules, relation back can be based on Rule 15(c)(1)(B) and (C), particularly in non-diversity, federal-question cases.  While there is no federal analogue to Ala. R. Civ. P. 9(h), Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure plainly provides for relation-back of amendments that do nothing more than correct a mis-naming of a party. Under the federal rule, an amendment relates back to the date of the original pleading being amended if

> the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

> If the plaintiff has described the Doe defendants so that their identity is clear, or if the defendants are better equipped than are the plaintiffs to ascertain the Doe defendants' citizenship, or if the Doe defendant is an agent of a company, a few federal courts have permitted the actual identity of a non-diverse Doe defendant to destroy diversity jurisdiction upon removal. While one might regard this as an exception to the rule that the citizenship of Doe defendants shall be disregarded, it merely anticipates the inevitable: The First Circuit and the Fifth Circuit have held that § 1441(a)'s direction to disregard the citizenship of defendants sued under fictitious names does not continue to apply to parties substituted for John Doe defendants, and that § 1447(e) requires remand to state court upon the substitution or addition of non-diverse defendants. [Internal footnotes omitted].

14B Wright, Miller *et al.*, FEDERAL PRACTICE AND PROCEDURE, § 3723 at 779 (West 2009) (citing *Casas Office Mach., Inc., v. Mita Copystar America, Inc.*, 42 F.3d 668 (1st Cir. 1994); *Doleac ex. Rel. Doleac v. Michalson*, 264 F.3d 470 (5th Cir. 2001)). Although the Eleventh Circuit's opinion in *Ingram* does not address the substitution of fictitious parties, its observation that § 1447(e) does not apply to the *substitution* of a new defendant for an original defendant is consistent with this line of reasoning. Some district courts in the circuit have addressed the point and found that substitution of a proper non-diverse fictitious party requires remand. For example, Judge DeMint of the Middle District of Alabama has written:

---

Thus, it is entirely possible that the correct true name of a defendant fictitiously named in a state-court complaint can be substituted by amendment after the case is removed to federal court, with the amendment relating back to the date of the filing of the original complaint.

11

> It is well-established that the court's diversity jurisdiction is determined at the time the notice of removal is filed. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S. Ct. 586, 590, 82 L. Ed. 845 (1938); *See also* 14A Wright, Miller and Cooper, FEDERAL PRACTICE AND PROCEDURE § 3739 at 581 (1985). Furthermore, under the recently amended removal statute, the citizenship of defendants sued under fictitious names should be disregarded for purposes of removal. *See* 28 U.S.C. § 1441(a). However, subsequent to this amendment of the removal statute, courts have found that where a plaintiff's complaint provides a description of a fictitious defendant in such a way that his or her identity cannot reasonably be questioned, the court should consider the citizenship of the fictitious defendant. *Lacy v. ABC Ins. Co.*, No. CIV.A. 95–3122, 1995 WL 688786 at *3 (E.D.La. Nov. 17, 1995); *Brown v. TranSouth Financial Corp.*, 897 F.Supp. 1398, 1401–02 (M.D.Ala.1995); *Tompkins v. Lowe's Home Ctr., Inc.*, 847 F.Supp. 462, 464 (E.D.La.1994) (citing *Green v. Mutual of Omaha*, 550 F.Supp. 815, 818 (N.D.Cal.1982)).

*Marshall v. CSX Transp. Co.*, 916 F. Supp. 1150, 1152 (M.D. Ala. 1995).

In the instant case, the plaintiff argues that she has done nothing more than amend the complaint to substitute the real name of the pharmacist who mis-filled her prescriptions for one of the "Fictitious Defendants 1-10." Because this does not "add" or "join" a new party, but merely corrects the misnomer of a fictitiously-named defendant, § 1447(e) does not apply and the court must remand the case because true diversity of citizenship never existed. The court is dubious, however, that she has adequately described the fictitious defendants in a way that makes clear that she intended to sue a real, but unknown, defendant. While the caption of her state-court complaint refers to "Fictitious Defendants 1-10" as "those entities

or individuals who may be liable for the damages pled herein," she does not otherwise refer to them or describe them in the text of the complaint. (See Doc. 1-4). The complaint does not describe any of the fictitious defendants as a pharmacist who erroneously filled her prescription, which description would indicate an intent to sue a real person whose identity is unknown. This simply fails to comply with the requirements of Ala. R. Civ. P. 9(h) for naming a defendant fictitiously. Alabama Rule 9(h) requires a sufficient description of the fictitious defendant to make clear that it is a real person or entity subject to potential liability. The rule is not aimed at allowing a plaintiff to retain an opening to add completely new defendants not previously described. In this case, the plaintiff's description of "Fictitious Defendants 1-10" simply does not identity a real, but unidentified defendant.

Because the plaintiff has not pleaded fictitious defendants properly under the Alabama rules, the amendment to add defendant Hoffer cannot be regarded as a mere substitution of a proper name for a fictitiously named defendant. It is an addition or joinder of a new defendant. Accordingly, the court must determine under § 1447(e) whether to allow the amendment and remand the case or to strike the amendment. This exercise is a balancing of the equities, within the sound discretion of the court. As one district court has described the process:

Pursuant to 28 U.S.C. § 1447(e), "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). A district court faced with the issue of whether to permit or deny the joinder of a non-diverse party has two options: (1) deny joinder or (2) permit joinder and remand the case to state court. *Ingram v. CSX Transportation, Inc.*, 146 F.3d 858, 862 (11th Cir.1998). The decision is committed to the sound discretion of the district court. *Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir.1999); *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir.1987); *Seropian v. Wachovia Bank, N.A.*, No. 10–80397–CIV, 2010 WL 2822195, at *2 (S.D.Fla. July 16, 2010).

Because the Court's decision will determine the continuance of jurisdiction, the addition of a non-diverse party should not be permitted without consideration of the original defendant's interest in the choice of the federal forum. *Hensgens*, 833 F.2d at 1182. Hence, the district court should scrutinize a motion to amend to join a non-diverse party more closely than a motion to amend under Rule 15 of the Federal Rules of Civil Procedure, *id.*; *see Kleopa v. Prudential Inv. Management, Inc.*, No. 08–81386–CIV, 2009 WL 2242606, at *2 (S.D.Fla. July 27, 2009), and should deny leave to amend unless strong equities support the amendment. *Smith v. White Consol. Industries, Inc.*, 229 F.Supp.2d 1275, 1281 (N.D.Ala. 2002).

The Court notes that, "[i]n balancing the equities, the parties do not start out on an equal footing." *Sexton v. G & K Services, Inc.*, 51 F.Supp.2d 1311, 1313 (M.D.Ala.1999). This is because of the diverse defendant's right to choose between a state or federal forum. *Bevels v. American States Ins. Co.*, 100 F.Supp.2d 1309, 1313 (M.D.Ala. 2000). Giving diverse defendants the option of choosing the federal forum is the very purpose of the removal statutes. *Id.* (citing *Hensgens*, 833 F.2d at 1181). Just as plaintiffs have the right to choose to sue in state court when complete diversity does not exist, non-resident defendants have the right to remove to and litigate in federal court when diversity of citizenship does exist. *Id.*

In deciding whether to permit or deny joinder, the district court must balance the defendant's interests in maintaining the federal forum

> with the competing interests of not having parallel lawsuits. *Hensgens* at 1182. In applying this balancing test, the district court should consider: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether plaintiff has been dilatory in asking for amendment, (3) whether plaintiff will be significantly injured if amendment is not allowed, and (4) any other factors bearing on the equities. *Id.*; *Mayes*, 198 F.3d at 462; *Duckworth v. State Farm Mutual Auto Ins. Co.*, No. 6:07–cv–2014–Orl–22DAB, 2008 WL 495380, at *1 (M.D.Fla. Feb. 20, 2008); *Portis v. Wal–Mart Stores, Inc.*, No. 07–0557–WS–C, 2007 WL 3086011, at *3 (S.D.Ala. Oct. 19, 2007); *Jones v. Rent–A–Center East, Inc.*, 356 F.Supp.2d 1273, 1275 (M.D.Ala.2005).

*Small v. Ford Motor Co.*, 923 F. Supp. 2d 1354, 1356–57 (S.D. Fla. 2013).

The first factor to consider is whether the amendment is offered solely for the purpose of defeating jurisdiction. Underlying this factor are such questions as whether the claim against the proposed defendant is relatively strong or weak on the merits, and whether the plaintiff knew or should have known of the defendant before removal. *See, e.g. Smith v. White Consol. Indus., Inc.,* 229 F. Supp. 2d 1275, 1281-82 (N.D. Ala. 2002). Examining these questions, it is, of course, impossible to predict whether the plaintiff will prevail against defendant Hoffer, but it is clear that Hoffer is not a marginal or nominal defendant. Plaintiff alleges she is the pharmacist who erroneously filled her prescriptions. As such, she is central to the merits of the plaintiff's case, and assuming she made the error alleged by plaintiff (filled the plaintiff's prescription with a medication other than

15

as called for by the prescription), the plaintiff has a strong claim against her.[6] Unlike the claim in *Smith v. White Consol. Indus., Inc.*, 229 F. Supp. 2d 1275, 1280 (N.D. Ala. 2002), described by that court as "weak," the claim here is potentially strong. *Compare Goodman v. Travelers Ins. Co.*, 561 F.Supp. 1111, 1113 (N.D.Cal.1983) (holding that if the claim against the non-diverse defendant is relatively strong, joinder should be allowed).

Likewise, it seems unlikely that the plaintiff knew Hoffer's identity at the time she filed suit. Although the defendant argues that the plaintiff could have seen the pharmacist's name on the label of her prescription, no evidence of that fact has been offered. The defendant has not submitted a copy of the label to confirm that it bears the pharmacists name, or that the plaintiff had available to her other ways of ascertaining the name prior to filing suit.

The court also is unconvinced that the timing of the amendment implies that it was offered solely to destroy diversity jurisdiction. Defendant cites cases holding that "the fact that a plaintiff attempted to add a non-diverse defendant only after the case was removed, even though he knew or should have ascertained the identity of the defendant at an earlier time, strongly indicates that the purpose of the plaintiff's amendment is to defeat federal jurisdiction." *Smith v. White Consol.*

---

[6] The court also recognizes the possibility that Hoffer, as a professional pharmacist, may carry her own malpractice liability insurance that would provide an additional source, beyond Alabama CVS, for collection of a judgment. For this reason, as well as her central role in the factual questions of the case, plaintiff may want her added as a defendant, irrespective of her impact on diversity jurisdiction.

*Indus., Inc.*, 229 F. Supp. 2d 1275, 1280 (N.D. Ala. 2002). But this notion is paradoxical. If the plaintiff truly wanted only to defeat diversity jurisdiction and secure a remand, the surest way to do so would have been to include the non-diverse defendant *in the original complaint*, to defeat removal before it began. If, as the defendant contends, the plaintiff knew the identity of the non-diverse defendant at the time she filed the complaint, the safest way for her to prevent removal was simply to name the non-diverse defendant in the original complaint, not wait until after removal and hope to thread the § 1447(e) needle. In doing so, a savvy plaintiff could prevent removal and never run the risk of the balancing act required by § 1447(e). Rather, to this court's mind, and at least in the circumstances of this case, the fact that the new defendant was offered in a risky post-removal amendment suggests that the plaintiff did not know the defendant's identity at the time the complaint was filed. There simply is no evidence that the plaintiff in this case knew Hoffer's identity and withheld it as a risky hole card against removal.

The plaintiff has not been dilatory in seeking the amendment to add Hoffer. The amendment was offered a mere seven days after the case was removed and only slightly more than a month after the complaint was originally filed in state court. Indeed, according to the complaint, plaintiff only discovered the medication error after consulting with her doctor sometime after May 7, 2016, and she filed

her lawsuit on October 10, 2016. Plaintiff was not dilatory in attempting to join Hoffer either before the law suit was filed or after it was removed.

While it is true that the defendant's right to seek a federal forum by removal must be weighed, so too the plaintiff's interest in avoiding duplicate litigation in separate fora. If the court were to strike the amendment adding Hoffer, the plaintiff would continue to litigate in this court over the question whether Hoffer negligently or wantonly mis-filled her prescription (for which Alabama CVS would be vicariously liable), while also litigating a new law suit in the Circuit Court of Tuscaloosa County over whether Hoffer negligently or wantonly mis-filled her prescription. The exact same factual and legal questions would be contested unnecessarily in two separate fora, wasting precious judicial resources and increasing the cost of the litigation for all parties. Plaintiff will be injured if the amendment is not allowed because she would have to file a new suit and bear the separate costs of litigation to pursue her claim against Hoffer.

Finally, other equities bearing on the amendment include the fact that not much has occurred in this case. Little effort will have been wasted in this case if it is returned to state court, whereas failing to remand it will result in double

litigation. Other than losing a federal forum, Alabama CVS will not be harmed by a remand.[7]

III. **Conclusion**

Accordingly, the defendant's motion to strike the amended complaint (Doc. 9) is DENIED, and the plaintiff's motion to remand (Doc. 5) the action to the Circuit Court of Tuscaloosa County, Alabama, is GRANTED, and the Clerk is DIRECTED to REMAND the action to the state court from whence it was removed.

DONE this 14th day of July, 2017.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

---

[7] The presence of Hoffer as a defendant reduces the concern for local prejudice ("home cooking") against Alabama CVS, which is the underlying rationale for diversity subject-matter jurisdiction. As Hoffer appears to be an Alabama resident, there is no reason to believe that she, or Alabama CVS by extension, will be unfairly treated by an Alabama jury.